UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WINDSOR MORTGAGE HOLDINGS LIMITED, LLC, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-170 |
| | § | |
| BRENDA S PYRON, *et al*, | § § | |
| Defendants. | § § | |

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

Plaintiff Windsor Mortgage Holdings Limited, LLC (Windsor) filed this action against Defendants Brenda S. Pyron and Dennis L. Pyron (the Pyrons) seeking to recover on a defaulted home equity loan through foreclosure of the lien securing the debt. Windsor has filed its motion for summary judgment (D.E. 25) seeking to eliminate the Pyrons' affirmative defenses and to prove up the note, Windsor's status as holder, the Pyrons' default, the liquidated amount owed, and the right to foreclose. The Pyrons have filed their motion for summary judgment (D.E. 26) seeking to bar Windsor's claim on the basis of limitations and claiming that Windsor has no evidence to establish the amount due. For the reasons set out below, the Court GRANTS IN PART AND DENIES IN PART Windsor's motion (D.E. 25) and DENIES the Pyrons' motion (D.E. 26) in its entirety.

# FACTS

Other than the calculation of the amount owed and the Pyrons' actual receipt of correspondence, the facts are largely undisputed. Objections to certain evidence will be addressed in the Discussion section.

The Pyrons executed a note in the original principal amount of $20,000, payable to GMAC Mortgage, LLC d/b/a DiTech (GMAC), on or about November 16, 2005. D.E. 25-1, pp. 9-12. GMAC endorsed the note in blank and Windsor is now owner as bearer, with physical possession of the note. On the same date of the note's execution, and to secure its repayment, the Pyrons signed a Closed End Deed of Trust granting GMAC a lien on their residence at 210 Santa Monica Street, Portland, Texas. D.E. 25-1, pp. 14-20. Through a series of assignments, Windsor is now the beneficiary of the Deed of Trust, with the right to enforce it according to its terms. D.E. 25-1, pp. 22-38.

After making payments through June 1, 2011, the Pyrons defaulted on their obligation to make any further payments on the note. On three occasions (January 4, 2010, May 7, 2010, and October 6, 2011), the Pyrons were sent letters giving them notice of default and intent to accelerate the indebtedness. D.E. 25-1, pp. 48-55. On December 1, 2011, attorneys representing GMAC's interests sent the Pyrons a notice of acceleration demanding payment of the full amount due, plus interest and fees in the total amount of $35,483.64. D.E. 25-1, pp. 60-63.

On or about January 30, 2012, the Pyrons hired the Litvin Law Firm, PC to represent their interests. D.E. 25-1, p. 72 (Cease and Desist Notice). On February 10, 2012, GMAC gave notice to both the Litvin Law Firm and to the Pyrons that it would,

thereafter, communicate regarding the Pyrons' account only with that law firm. The communications would include telephone calls, emails, and all written correspondence, including the Pyrons' monthly account statements. This recognition that the Pyrons were represented by counsel would continue unless or until they notified GMAC in writing that the representation had terminated. D.E. 25-1, pp. 70-71.

The Pyrons did not pay the accelerated amount due. On August 27, 2012, GMAC filed a petition for judicial foreclosure in the 36th Judicial District Court of San Patricio County, Texas under Cause No. S-12-5757CV-A. D.E. 25-1, p. 133. However, on January 11, 2013, GMAC filed a nonsuit without prejudice, terminating the judicial foreclosure action. D.E. 25-1, p. 67. Immediately thereafter, it sent a monthly statement, dated January 15, 2013, to the Pyrons through the Litvin Law Firm. D.E. 25-1, pp. 74-76. That statement reflected that the total amount due was $9,003.32, as of the due date of July 1, 2011—when the Pyrons ceased making payments.

Similar statements followed, dated February 15, 2013, March 15, 2013, April 15, 2013, May 15, 2013, June 17, 2013, September 16, 2013, October 15, 2013, and November 15, 2013. D.E. 25-1, pp. 79-117. Each claimed a greater amount due than the last. But to cure the default and bring the account current, they all demanded less than the total principal balance listed and substantially less than the full accelerated balance of the note would have been. Starting on December 16, 2013, similar notices were sent to the Pyrons by way of the Litvin Law Firm by Ocwen Loan Servicing, LLC. D.E. 25-1, pp. 119-23 (including statement of January 15, 2014). Throughout this time, the Litvin Law Firm continued to represent the Pyrons. D.E. 25-1, p. 138.

On November 10, 2016, Windsor's attorneys sent notice of default and intent to accelerate to the Pyrons at their own residence address. D.E. 25-1, pp. 57-58. The amount owed to cure default was listed as $17,634.65. On December 13, 2016, Windsor's counsel sent to the Pyrons' residence address a notice of acceleration of loan maturity, reflecting that all unpaid principal and accrued interest was due and directing the Pyrons to contact the firm for the total amount. D.E. 25-1, p. 128. On May 18, 2017, Windsor filed this action. D.E. 1.

Dennis Pyron admitted in his deposition that the Pyrons have made no payments on this debt since the loan went into default in 2011. D.E. 25-1, p. 139. In his summary judgment affidavit, however, Dennis Pyron claims that he made attempts to resolve this matter, modify the loan, and make payments, but that Windsor and its predecessors in interest refused those efforts. D.E. 26, p. 5. He further claims that he did not receive any statements or correspondence after the December 1, 2011 acceleration. The Pyrons' current attorney, Lynda S. Ladymon, testified that she occasionally inquired of the Pyrons' previous counsel if they had any correspondence on the account and they indicated that they had not received any communications from Windsor's predecessors in interest. D.E. 29-3.

Windsor now claims that the Pyrons owe $75,538.05 as of January 30, 2018, and that the debt continues to accrue interest. D.E. 25-1, pp. 130-31. That calculation reflects $35,173.70 in principal, $21,884.27 in interest, $8,082.03 in property taxes, and $10,398.05 in attorney's fees and expenses.

**DISCUSSION**

## A. Standard of Review

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

**B. Narrowing of Issues**

The Pyrons pled the following as affirmative defenses: limitations; failure to mitigate damages; illegality; no damages; unconscionability; unclean hands; violation of the Texas Constitution; and lack of subject matter jurisdiction. D.E. 16. The Court previously rejected the jurisdictional issue finding that the amount in controversy requirement for diversity jurisdiction has been met. D.E. 15. Limitations and damages are addressed below. Windsor challenged the remaining defenses in its motion. D.E. 25.

The Pyrons did not respond to Windsor's arguments challenging the remaining defenses but rather stated, "Defendant [sic] has asserted numerous other defenses which it will not pursue." D.E. 29, p. 2. For that reason, the Court GRANTS IN PART Windsor's motion (D.E. 25) and DISMISSES the Pyrons's defenses based upon: failure to mitigate damages; illegality; unconscionability; unclean hands; and violation of the Texas Constitution.

## C. The Limitations Defense

The parties do not dispute that a four-year statute of limitations applies to an action seeking to collect a debt by foreclosure of a lien on real property. Tex. Civ. Prac. & Rem. Code § 16.035(b). Neither is there any disagreement that the cause of action accrues when the holder of the note accelerates the debt. *See e.g., Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

The Pyrons rely on the fact that Windsor's predecessor in interest accelerated the indebtedness on the note by letter dated December 1, 2011. Given that this action was not filed until May 18, 2017 (more than five years after the debt was accelerated), it is barred by limitations absent some other intervening factor. Windsor asserts that an intervening factor was its predecessor's abandonment or rescission of the December 1, 2011 acceleration before the expiration of four years from that date. Thus, Windsor claims that limitations did not begin to run until the second acceleration of indebtedness on December 13, 2016. In that event, the 2017 filing would be well within the four-year period.

The mortgage was not assigned to Windsor until September 26, 2016.  D.E. 25-1, pp. 36-38.  Thus, the Court must determine whether the undisputed facts set out above demonstrate that Windsor's predecessors in interest took the necessary action to abandon the December 1, 2011 acceleration within four years of that date.  Windsor argues that it did so by (a) nonsuiting the prior foreclosure action and (b) sending monthly statements seeking to collect only the overdue amounts of monthly payments and associated charges, which were less than the full amount of principal and interest that would have been due and owing if the note were still accelerated.  The Pyrons argue that the nonsuit was nothing more than a failure to seek a remedy, the monthly statements were insufficient to abandon the acceleration, and they never actually received any monthly statements of any kind after the 2011 acceleration and before the expiration of limitations.

## 1.  Abandonment of Prior Acceleration

The Pyrons claim that abandonment of acceleration requires some bilateral consensus, such as the borrower offering and the lender accepting partial payments on the debt.  The Fifth Circuit has addressed Texas law in this regard and has concluded that a lender may unilaterally abandon its acceleration and return the debt to its pre-acceleration status.  Reciting an *Erie* guess[1] based on Texas intermediate appellate court opinions, the Fifth Circuit wrote:

> The Texas Supreme Court would likely hold that a lender
> may unilaterally abandon acceleration of a note, thereby

---

[1]   A federal court sitting in diversity jurisdiction to adjudicate state law claims applies the substantive law of the forum state.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  If it is a matter of common law on which the state's highest court has not issued an opinion, the federal court may review lower state court opinions and apply the law as it projects the state's high court would in an "*Erie* guess."  *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).

> restoring the note to its original condition, in the manner that
> U.S. Bank did in this case: by sending notice to the borrower
> that the lender is no longer seeking to collect the full balance
> of the loan and will permit the borrower to cure its default by
> providing sufficient payment to bring the note current under
> its original terms.

*Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015).

The only caution against abandonment is that the borrower neither objects to it nor has detrimentally relied on the acceleration during the limitations period. *Id*. The Pyrons have articulated no objection to abandonment and have not claimed any reliance to their detriment. Rather, according to Dennis Pyron, after the note had been accelerated, he sought to modify it or bring it current by paying less than the accelerated amount. D.E. 26, p. 5. While Windsor challenges that testimony in another context,[2] the testimony confirms that the Pyrons did not seek to keep the debt in its 2011 accelerated status.

It is also necessary that the abandonment take place within the limitations period triggered by the acceleration sought to be abandoned. Otherwise, the lender is required to foreclose within four years of acceleration. *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679 (5th Cir. 2015) (per curiam) (finding no error in determination that unilateral abandonment of acceleration was permitted). At issue, then, are actions taken with respect to the Pyrons' mortgage between December 1, 2011 and December 1, 2015. That time frame encompasses the January 11, 2013 nonsuit of the judicial foreclosure action and the eleven monthly statements that permitted cure by paying only the overdue principal, interest, and associated charges—totaling less than the previously

---

[2] *See* discussion regarding monthly statements and Dennis Pyron's declaration, below.

accelerated balance.  Windsor argues that the nonsuit and the monthly statements are, independently or together, sufficient to demonstrate that the December 1, 2011 acceleration had been abandoned.

## 2. Nonsuit

The Fifth Circuit appears to hold that a creditor may abandon its prior acceleration merely by nonsuiting a foreclosure proceeding.  *Costello v. U.S. Bank Trust, N.A.*, 689 F. App'x 253, 255 (5th Cir. 2017) (per curiam).  The court stated, "as the district court correctly noted, JPMorgan explicitly abandoned its foreclosure proceedings by nonsuiting the claim . . . and 'a creditor can abandon or rescind its acceleration by voluntarily dismissing its claims against the debtor.'"  *Id.* (citing *Bitterroot Holdings, LLC v. MTGLQ Inv'rs, L.P.*, No. 5:14-CV-862-DAE, 2015 WL 6442622, at *1 (W.D. Tex. Oct. 23, 2015), *aff'd on other grounds*, 648 F. App'x 414 (5th Cir. 2016) and *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ).  However, it is not clear from this unpublished opinion[3] whether the court considered other facts in determining that there had been unilateral abandonment.  This Court will review the trial court's *Costello* opinion and the authorities it relied on to determine whether the Fifth Circuit's *Costello* opinion should be construed as giving a nonsuit abandonment power.

The *Costello* trial court opinion recites that the lender accelerated the note, filed foreclosure proceedings, nonsuited the foreclosure proceedings, sent the borrower a notice of rescission, and then re-accelerated the note and began new foreclosure

---

[3] As an unpublished per curiam opinion issued after January 1, 1996, this opinion is not precedential.  Fifth Circuit Local Rule 47.5.4.

proceedings within the limitations period that would have been triggered by the initial acceleration. *Costello v. U.S. Bank, N.A.*, No. H-16-702, 2016 WL 5871459 (S.D. Tex. October 7, 2016) (Rosenthal, J.), *aff'd*, 689 F. App'x 253. Thus it was not nonsuit, alone, that caused abandonment in that case. Nothing about the Fifth Circuit's per curiam affirmance of that decision purports to eliminate from consideration the additional facts upon which the trial court relied.

The difficulty of accepting nonsuit, alone, as sufficient to demonstrate abandonment is that such a relinquishment of the remedy of foreclosure does not necessarily eliminate the right to proceed with a remedy, anew. The parties have not demonstrated that the nonsuit forfeits the lender's right to re-file without re-accelerating. Nor have they shown that the nonsuit bestows on the borrower the right, without more, to bring the account current by paying only the arrearage.

Windsor has not cited any authority that gives a debtor the right to bring an account current by paying less than the accelerated amount merely because the creditor has nonsuited a foreclosure proceeding. Neither has it pointed to authority that prevents a creditor from relying on the initial acceleration of the debt to file a new foreclosure proceeding after a prior nonsuit. The *Costello* opinions both cited two cases as support for a creditor's ability to abandon acceleration by unilateral action, including voluntary dismissal of its claims against a debtor: *Bitterroot Holdings,* 2015 WL 6442622, at *1 and *Denbina*, 516 S.W.2d at 463.

Neither case gives a nonsuit, alone, the power of abandonment of acceleration. In *Bitterroot Holdings,* as in *Costello*, additional notices accelerating the debt and additional

foreclosure proceedings were filed within the limitations period after the previous nonsuit. *Bitterroot Holdings,* 2015 WL 6442622, at *1. The *Denbina* case has a significantly different procedural posture.[4] *Denbina*, 516 S.W.2d at 463. However, it also involved new proceedings against the debtors within the same year as the initial acceleration. The new proceeding sought only the overdue amount, negating the prior acceleration.

This Court's hesitation to find nonsuit, alone, to be sufficient to revoke an acceleration of debt is reinforced by recent opinions. In its initial decision in the *Callan* case, our sister court wrote:

> Here the facts clearly show that Deutsche did not rescind its acceleration when it dismissed the 2008 foreclosure proceeding. Deutsche relied on the same November 6, 2007 notice of acceleration in filing its second foreclosure proceeding in February 2009. If Deutsche rescinded the acceleration by dismissing the 2008 action, it could not have relied on the same notice of acceleration in filing the second action in 2009. Its own actions make clear that Deutsche did not abandon the acceleration by dismissing the 2008 action.

*Callan v. Deutsche Bank Tr. Co. Americas (Callan I)*, 11 F. Supp. 3d 761, 769 (S.D. Tex. 2014), *amended*, (*Callan II*), 93 F. Supp. 3d 725 (S.D. Tex. 2015). While that is a strong statement against abandonment implied by nonsuit, that holding was omitted from the court's subsequent amended order in that case. Instead, the court based its decision on the enforceability of the creditor's separate notice of rescission. *Callan II*, 93 F. Supp. 3d

---

[4] The city levied a pavement assessment—to be paid in installments—against landowners, with a corresponding lien on their real property. The landowners sued to invalidate the lien as their property was exempt homestead. The city then accelerated the assessment and filed a counterclaim for the full amount. Prior to judgment, the city nonsuited its claim and the landowners prevailed in eliminating the lien. Within the original limitations period, the city filed a new suit against the landowners, in personam, for only the overdue payments, not the full accelerated amount. The issue presented in the case was whether the accelerated debt presented in the prior counterclaim was a compulsory counterclaim such that its nonsuit had res judicata effect. The court held that it did not.

at 737.  In so doing, *Callan II* noted that whether nonsuit alone effectively rescinds an acceleration is undetermined in Texas.

In *Smither*, the Fifth Circuit looked to other evidence that would tend to corroborate or controvert the lender's position regarding the status of the loan post-nonsuit.  In so doing, it noted that the credit reporting activity stated that the loan was closed with a delinquency that did not come close to the accelerated balance.  *Smither v. Ditech Fin., L.L.C.*, 681 F. App'x 347, 354 (5th Cir. 2017).  It thus held that the lender had rescinded its acceleration.

The Court recognizes that voluntary nonsuits of foreclosure actions are often part of a lender's abandonment of acceleration of the indebtedness.  But the Court does not hold on this record and current authorities that such nonsuits, alone, accomplish a rescission of acceleration.  While the lender's nonsuit is inconsistent with a present intention to seek its remedy, Windsor has not demonstrated that a voluntary nonsuit, as a matter of law, returns the loan to its pre-accelerated status such that it could not seek its remedy without re-accelerating the indebtedness.

This holding does not, however, end the inquiry.  Windsor also relies on its monthly statements, which reflect that the note was no longer accelerated within the limitations period.  The monthly statements, together with the nonsuit or alone, demonstrate an abandonment of acceleration.

### 3.  Monthly Statements

As set out above, according to Windsor's undisputed business records, its predecessors sent to the Pyrons eleven monthly statements during the putative limitations

period.  Many courts have held that such statements, seeking less than the accelerated balance to cure a default, evidence the lender's abandonment of its prior acceleration. *See e.g., Boren*, 807 F.3d at 106 (notice of default); *Leonard*, 616 F. App'x at 680; *Wheeler v. U.S. Bank N.A.*, No. H-14-0874, 2016 WL 554846, at *5 (S.D. Tex. Feb. 10, 2016) (account statements or notice of default).  The Pyrons argue that the particular monthly statements at issue here are insufficient to abandon acceleration because:  (a) they do not offer to accept less than the total amount due; (b) they show a failure to assess late fees, inconsistent with abandonment; (c) the statements do nothing but comply with federal disclosure requirements; (d) Windsor's predecessor wrote off the loan, inconsistent with abandonment; (e) Dennis Pyron's effort to negotiate a payment arrangement was rebuffed on the basis that the acceleration was being enforced; and (f) the Pyrons did not actually receive the statements.  D.E. 29, pp. 9-10.[5]  The Court disagrees.

**Less than Total Amount Due**.  The Pyrons suggest, without benefit of authority, that the monthly statements are ineffective to abandon the accelerated indebtedness because they are nothing more than a statement of the Pyrons' right to reinstatement guaranteed by the Deed of Trust, disclosure of which is mandated by federal law.  That is not what the statements say.  They do not demand the accelerated balance and offer the Pyrons an option to reinstate.

---

[5]    The parties agree that Windsor or its predecessors could have sent a notice of a unilateral rescission of acceleration pursuant to newly-enacted Tex. Civ. Prac. & Rem. Code § 16.038.  However, they also agree that this new process was optional and that failure to take advantage of it does not eliminate Windsor's claim that its predecessors abandoned the acceleration.

Instead, the statements demand a total amount due arrived at by adding only the past due amounts and "other" charges, which total less than the principal balance due, as disclosed on the same statement. In fact, the accelerated amount (which exceeds the principal balance due because it includes interest and other charges) is not set out anywhere on the statement. The Pyrons are given the option to phone a customer care number for the amount necessary to pay the loan in full. The monthly statements sent during the limitations period do reflect an abandonment of the accelerated indebtedness as they seek payment only of the arrearage and related charges.

**Late Fees**. The Pyrons claim that the statements fail to assess late fees, which is consistent with a loan in an accelerated status. However, each statement shows a total amount due, followed by a reference to a late fee. *E.g.*, D.E. 25-1, pp. 74, 91. The Pyrons have not submitted any evidence to support their claim that the nature of the charges stated on the monthly statements is inconsistent with an abandonment of a prior acceleration.

**The Monthly Statements Would Always Defeat Foreclosure**. According to the Pyrons, if the Court construes these mandated monthly statements as abandoning an acceleration, then no lender could ever foreclose because every acceleration would be abandoned by the following month's statement, prior to foreclosure. They cite 12 C.F.R. § 1026.41, which dictates the information to be provided in periodic statements for residential mortgage loans.

Windsor does not address this argument. However, the Court does not find anything on the face of the regulation that requires a lender to represent the amount due

to be only the arrearage if the loan has been, and remains, accelerated. The regulation simply requires the lender to state the amount due and explain how it arrived at that figure. The Court rejects the argument that sending a statement that complies with 12 C.F.R. § 1026.41 would necessarily defeat a creditor's foreclosure rights.

**Credit Report Write-Off**. The Pyrons offer what purports to be an Equifax credit report for Dennis Pyron obtained on April 4, 2014. D.E. 19-2. It reflects that Windsor's predecessor reported the account closed on February 28, 2014, and sets out separate total and past due balances. Windsor objects to this exhibit as unauthenticated and as hearsay. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (unauthenticated documents are not competent summary judgment evidence). The Court SUSTAINS the objections and disregards the credit report.[6]

**Dennis Pyron's Declaration**. Dennis Pyron attested that he tried to work out an accommodation with Windsor's predecessor to reinstate or modify the loan with a payment less than the full accelerated balance, but that offer was refused. D.E. 26, p. 5. This testimony is vague and conclusory in that it fails to state when the effort was made, with whom Dennis Pyron communicated, the nature of the offer or the creditor's response. It further is in apparent conflict with his deposition testimony in which he claimed he did not remember anything he did to work out an accommodation. D.E. 30, pp. 12-13.

---

[6] The Court further notes that, if the loan is charged-off, no monthly statements of the type required by the disclosure regulation would be required. 12 C.F.R. § 1026.41(e)(6) (exempting charged-off loans from disclosure requirements unless and until the loan servicer resumes collection). This makes the sending of the monthly statements probative of the argument that the loan was not charged-off or collection had resumed during the limitations period.

Windsor objects to Dennis Pyron's declaration, citing the sham affidavit rule that prevents a party from manufacturing a fact issue with unexplained self-contradictory testimony. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The Pyrons defend the declaration, arguing that the deposition testimony only applied to pre-acceleration discussions whereas the declaration addresses post-acceleration communications. This differentiation is not supported by a plain reading of the deposition testimony. Dennis Pyron claims that he made some agreement because, "I'm still in the house, and they didn't foreclose or they didn't close things up." D.E. 30, p. 12. This statement supports an abandonment of acceleration in direct conflict with his declaration that he could not make a deal to return the loan to un-accelerated status. The Court SUSTAINS the objection and disregards the affidavit.

**Actual Receipt of Statements**. The Pyrons do not challenge the authorities that treat monthly statements of an un-accelerated amount as an abandonment of a prior acceleration. Neither do they proffer evidence controverting the business records showing that Windsor's predecessors sent the Pyrons such statements to their attorneys' law firm address or that it was appropriate to use the attorneys' address under the circumstances. Instead, they argue that neither they nor their attorneys actually received the statements.

"It is settled in [Texas] . . . that when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee." *Southland Life Ins. Co. v. Greenwade*, 138 Tex. 450, 455, 159 S.W.2d 854, 857 (Comm'n App. 1942, op. adopted) (parenthetical in original). The

presumption is not dispositive in the face of the addressee's denial of receipt. *Sudduth v. Commonwealth Cty. Mut. Ins. Co.*, 454 S.W.2d 196, 198 (Tex. 1970). In such an event, receipt becomes a question of fact beyond a court's purview to decide. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 359 (Tex. 1971) (question of fact for the jury).

Important here is that it is the addressee's denial of receipt that counts. Thus any denial of receipt by the Pyrons or their current counsel, Lynda S. Ladymon, is ineffective to rebut the presumption. The addressee was the Litvin Law Firm, the Pyrons' attorneys prior to (and contemporaneous with) the legal representation of Ms. Ladymon. The only denial of the Litvin Law Firm's receipt comes through the Pyrons and Ms. Ladymon, who testify that the Litvin Law Firm never sent to them any such mail it may have received and the Litvin Law Firm never acknowledged receiving such mail when they spoke with their attorneys. This is insufficient to create a fact issue on notice.

The Eighth Circuit, applying Texas law, held that where the alleged recipient only testified that the material mailed was not in its file and no one recalled receiving it, there was no substantial evidence of a denial of receipt. *Shur–Value Stamps, Inc. v. Phillips Petroleum Co*., 50 F.3d 592, 596 (8th Cir.1995) (citing *Sudduth,* 454 S.W.2d at 198). The proffered evidence here is one or two steps further removed from the evidence found insufficient in *Shur-Value*. Here, any representation regarding the Litvin Law Firm's receipt of mail is speculative or classic hearsay in that it is Dennis Pyrons' and Ms. Ladymon's assertions of what unidentified representatives of the Litvin Law Firm told them, out of court. They have demonstrated no personal knowledge of the receipt of mail

at the Litvin Law Firm and have failed to produce any affidavit based on personal knowledge from an appropriate representative of that firm. Windsor has objected to this evidence as hearsay and the objection is SUSTAINED.

The uncontroverted evidence is that Windsor's predecessors sent monthly statements reflecting an un-accelerated balance due within the limitations period. This evidence is sufficient to demonstrate that Windsor abandoned its prior acceleration. The Court GRANTS IN PART Windsor's motion (D.E. 25) insofar as it seeks dismissal of the limitations defense. The Court DENIES IN PART the Pyrons' motion (D.E. 26) insofar as it seeks dismissal of the claim on the basis of a limitations bar.

**D. The Amount Due**

Windsor seeks $75,538.05 as of January 30, 2018, plus interest that continues to accrue. D.E. 25-1, pp. 130-31. That calculation reflects $35,173.70 in principal, $21,884.27 in interest, $8,082.03 in property taxes, and $10,398.05 in attorney's fees and expenses. The Pyrons have challenged Windsor's right to collect any amount, claiming that there is no evidence of the amount owed. They object to the Declaration of Arthur Fuss as lacking personal knowledge, self-serving, and unsupported or conclusory.

The Court OVERRULES the objection as to the declaration lacking personal knowledge and being self-serving. A successor in interest may provide testimony that is within an employee's personal knowledge, gained by review of the predecessor's business records. *Dalton v. F.D.I.C.*, 987 F.2d 1216, 1223 (5th Cir. 1993). The Pyrons have not identified any portion of the declaration that is subjective and thus merely self-serving. Those objections are also OVERRULED.

However, the Court SUSTAINS the objection that the declaration is conclusory. Windsor has submitted its pay history for this account. D.E. 25-1, pp. 40-46. The pay history is a spreadsheet containing data without any supporting detail. The business records affidavit does not purport to describe the origin of charges and how they are represented on the spreadsheet and incorporated into the principal, interest, and other expense charges. *See* D.E. 25-1, pp. 2-7. Windsor also offers two pages referred to as "payoff." D.E. 25-1, pp. 130-31 (Exhibit A-28). This exhibit purports to show, in summary form, cash flow data, an amortization schedule, and additional expenses (taxes and attorney's fees).

Nothing in this evidence shows how calculations were made, how amounts were added so that the outstanding principal balance exceeds the original principal amount of the loan, or what right Windsor has to include its attorney's fees and expenses as amounts payable from the Pyrons—much less whether those fees and expenses were reasonable and necessary and fully pertained to this account. It is not this Court's responsibility to sift through the evidence and reconstruct Windsor's claim.

While Windsor's submission constitutes some evidence that the Pyrons owe money on their loan—a matter the Pyrons do not deny—it has not successfully evidenced the amount in order to support any order to be issued by this Court liquidating the claim. The Court DENIES IN PART without prejudice Windsor's request for summary judgment (D.E. 25) on the amount the Pyrons owe. The Court DENIES the Pyron's request for summary judgment (D.E. 26) on the basis that there is no evidence of any amount owed.

### E. Order for Foreclosure and Attorney's Fees

Because Windsor has not demonstrated the amount the Pyrons owe, it is not entitled to summary judgment allowing foreclosure of its lien to satisfy that debt. The Court thus DENIES IN PART Windsor's motion (D.E. 25) insofar as it seeks an order permitting foreclosure and an award of attorney's fees.

### CONCLUSION

For the reasons set out above, the Court GRANTS IN PART and DENIES IN PART Windsor's motion for summary judgment (D.E. 25) as follows:

- The Court GRANTS summary judgment and DISMISSES the Pyrons' defenses of limitations; failure to mitigate damages; illegality; no damages; unconscionability; unclean hands; and violation of the Texas Constitution; and

- The Court DENIES summary judgment without prejudice with respect to Windsor's request to liquidate the amount the Pyrons owe to Windsor and permit foreclosure of its lien and recovery of attorney's fees.

The Court further DENIES the Pyrons' motion for summary judgment (D.E. 26) in its entirety.

ORDERED this 25th day of April, 2018.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE